UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAYLER BORGES (A#074-141-633),<br>Petitioner,<br>v.<br>WARDEN, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER,<br>Respondent. | No. 1:26-cv-04693-TLN-SCR<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I. Factual and Procedural History**

Petitioner is a native and citizen of Cuba who lawfully entered the United States through the visa lottery program on June 18, 1998. ECF No. 1; ECF No. 7 at 11. He adjusted his immigration status to become a lawful permanent resident on August 31, 2001. ECF No. 7 at 11. However, he was ordered removed on July 27, 2004 based on his convictions for two crimes involving moral turpitude. ECF No. 7 at 11, 21. Petitioner waived his right to appeal the IJ's order of removal. ECF No. 7 at 21. Therefore, the removal order became final on July 27, 2004. Id. Petitioner was released from immigration detention pursuant to an Order of Supervision

("OSUP") on October 27, 2004 after Immigration and Customs Enforcement ("ICE") could not effectuate his removal to Cuba. ECF No. 7 at 25-27 (Order of Supervision). For over 20 years, Petitioner reported to immigration officials as required. ECF No. 1.

On January 21, 2026, Petitioner was arrested by ICE after reporting for his regularly scheduled check-in appointment. ECF No. 7 at 37 (I-213 Form dated 1/21/26). Between Petitioner's date of release on supervision in 2004 and his re-detention in 2026, Petitioner sustained two convictions for misdemeanor disorderly intoxication. ECF No. 7 at 61-62, 70. While Petitioner was arrested for various other criminal offenses, none led to conviction. More importantly, none of these arrests or convictions were cited by ICE in the Notice of Revocation of Release issued on January 21, 2026. ECF No. 7 at 73.

Petitioner filed the pending § 2241 petition while in custody at the California City ICE Detention Facility located in this judicial district. ECF No. 1. In claim one, Petitioner contends that his indefinite post-removal detention violates due process because there is no likelihood of his removal to Cuba in the reasonably foreseeable future and no third country has agreed to accept him. ECF No. 1 at 4 (citing Zadvydas v. Davis, 533 U.S. 678 (2001). In March 2026, "ICE officers acknowledged to Petitioner that Cuba would not accept his return." ECF No. 1 at 3. Since that time, ICE has attempted to persuade Petitioner to consent to his third country removal to Mexico. Id. "Petitioner lawfully refused to consent to speculative third-country removal." Id. Next, in claims two and three, Petitioner asserts that his re-detention without changed circumstances and the revocation of his supervision violated due process because he did not receive any written notice concerning revocation of his supervision prior to being arrested. Finally, Petitioner alleges that his continued detention violates due process because it serves no legitimate governmental purpose.

Respondent acknowledges that Petitioner is detained pursuant to 8 U.S.C. § 1231(a)(6) based on his final order of removal. ECF No. 7. Respondent counters that "ICE has offered Petitioner release from custody via removal to Mexico but he has repeatedly refused to cooperate." ECF No. 7 at 1. Based on this lack of cooperation, Respondent also claims that Petitioner is detained pursuant to § 1231(a)(1)(C). ECF No. 7. According to Respondent,

Petitioner cannot satisfy his burden under Zadvydas "since he has not demonstrated that the receiving country will not take him or that removal is barred by our own laws." Id. at 3. Petitioner was served with three separate Notices of Removal to Mexico, beginning on June, 2026. ECF No. 7 at 77, 81, 86. Respondent requests that the Court take judicial notice of the fact that the government of Mexico has a "'standing agreement' with the United States to accept Cuban Nationals, [resulting in] over 6,000 successful removals of Cuban Nationals in fiscal years 2025 and 2026," but they do not provide a copy of such an agreement, nor does Respondent explain whether the successful removals involved any Cubans with criminal records. ECF No. 7 at 6. It appears to the Court that Respondent is asserting that Petitioner refused to cooperate in his removal by refusing to sign these forms as well as Instruction Sheets Regarding Requirement to Assist in Removal. ECF No. 7 at 77-88. Respondent further asserts that Petitioner was provided with notice of the revocation of his supervision, as well as a post-detention informal interview by ICE, as required by applicable agency regulations. ECF No. 7 at 73 (Notice of Revocation of Release dated January 21, 2026), 75 (Noncitizen Informal Interview dated June 26, 2026). Respondent requests that all forms of relief be denied to Petitioner. ECF No. 7.

By way of reply, Petitioner points out that "[R]espondents rely on statutory authority permitting detention during the removal period, [but] they present no evidence demonstrating that Petitioner's removal is significantly likely in the reasonably foreseeable future as required under Zadvydas[.]" ECF No. 8 at 1-2. Additionally, Petitioner indicates that he has expressed a fear of removal to Mexico to Deportation Officer Medina who has visited him several times in detention. Id. at 2. "[A]ll fear base[d] claims have been ignored by immigration authorities[.]" Id. Petitioner submits that designating a potential country of removal does not equate to establishing the foreseeability of removal "absent proof of acceptance by that country." Id. at 3. Regarding the revocation of his supervised release, Petitioner submits that the informal interview on June 26, 2026 did not comply with 8 C.F.R. §§ 241.4 and 241.13 because it was not "prompt." Id.

**II. Immigration Detention Framework After a Final Order of Removal**

The detention of noncitizens who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a). "In particular, § 1231(a)(6) provides that after a 90-day

'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). After this 90-day removal period has elapsed, ongoing detention is only authorized for "four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Arteaga-Martinez, 596 U.S. at 578–79 (quoting 8 U.SC. § 1231(a)(6)). Although Petitioner falls within the second category, based on his convictions for crimes involving moral turpitude that led to his final administrative order of removal, Respondent did not invoke any of the four categories to justify Petitioner's detention in this case. See ECF No. 7 at 72 (Notice of Revocation of Release).

The Supreme Court examined the constitutional limits of detention under 8 U.S.C. § 1231(a)(6) in Zadvydas, describing as "obvious" the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any" procedural "protection[s.]" 533 U.S. at 692. In order to avoid serious constitutional problems, Zadvydas read an implicit due process limitation into the immigration statute governing the detention of noncitizens subject to a final order of removal. The Supreme Court reasoned that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. As a result, "once [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Zadvydas, 533 U.S. at 699. In order to establish a uniform standard for determining when ongoing detention crosses constitutionally acceptable limits, the Court recognized a presumptively reasonable six month period of detention. Id. at 701. After that period, if a noncitizen "provides a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

Numerous courts have held, however, that the burden-shifting scheme of Zadvydas is only applicable to those noncitizens who had been detained and never released following a final order of removal. Zadvydas, 533 U.S. at 701. Where, as here, Petitioner was issued a final order of

removal, detained, and subsequently released and then redetained, "it is [ICE's] burden to show a significant likelihood that the [noncitizen] may be removed" pursuant to 8 C.F.R. § 241.13(i)(2). Escalante v. Noem, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); see also Roble v. Bondi, 803 F.Supp.3d 766, 772-73 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); Abuelhawa v. Noem, 811 F.Supp.3d 847, 860 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."); Nguyen v. Hyde, 788 F.Supp.3d 144, 149-150 (D. Mass. June 20, 2025); Vu v. Noem, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *5 (E.D. Cal. Nov. 6, 2025).

**III. Analysis**

Petitioner's order of removal became final on July 27, 2004, upon his waiver of appeal. See 8 C.F.R. § 1003.39 ("[T]he decision of the [IJ] becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken whichever occurs first[.]"); 8 C.F.R. § 1241.1(b) (order of removal becomes final "[u]pon waiver of appeal by the respondent"). This shifted his detention to § 1231(a) and triggered the start of the 90-day removal period, which has long since lapsed. Accordingly, Petitioner's detention is governed by 8 U.S.C. § 1231(a)(6).

Respondent argues that Petitioner's failure to consent to his third country removal to Mexico restarts the mandatory 90 day period of post removal detention pursuant to 8 U.S.C. § 1231(a)(1)(C). DHS regulations allow the government to extend the removal period "if the [noncitizen] fails or refuses to make timely application in good faith for travel or other documents necessary to the [noncitizen's] departure or conspires or acts to prevent the [noncitizen's] removal subject to an order of removal." 8 C.F.R. § 241.4(g)(1)(ii). To do so, the government must issue a "Notice of Failure to Comply" prior to the expiration of the removal period. Id. Here, Respondent has not put forth any evidence of Petitioner's alleged noncooperation with identify verification, travel-document processing, or other required steps that would justify the government's extension of the § 1231(a)(1)(C) removal period and defeat Petitioner's claim.

Therefore, the undersigned rejects Respondent's argument that Petitioner is still within the 90-day mandatory detention period of 8 U.S.C. § 1231(a).

Petitioner was re-detained in January 2026 because "ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future[.]" ECF No. 7 at 73. Respondent has the burden of demonstrating this significant likelihood in order to justify Petitioner's redetention. Vu v. Noem, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *5 (E.D. Cal. Nov. 6, 2025). An IJ ordered Petitioner removed to Cuba, but Respondent makes no attempt to demonstrate that his removal to Cuba is likely in the reasonably foreseeable future. Instead, Respondent asserts that Petitioner is subject to removal to the third country of Mexico because it has a "'standing agreement' with the United States to accept Cuban Nationals, [resulting in] over 6,000 successful removals of Cuban Nationals in fiscal years 2025 and 2026," ECF No. 7 at 6. Because Respondent failed to provide the Court with a copy of this bilateral agreement, the undersigned denies the request to take judicial notice of it. Moreover, the successful third country removal of other Cuban nationals is not sufficient to demonstrate that Petitioner is specifically likely to be removed pursuant to this standing agreement. "[S]tanding alone, the fact that removals to a particular country 'are in fact occurring,' says nothing about whether Mexico will accept [Petitioner] any time soon." Arenado-Borges v. Bondi, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025).

A great deal of emphasis is placed on Petitioner's consent to third country removal to Mexico in the parties' briefing. This suggests to the Court that there are specific criteria that must be met, of which the noncitizen's consent is one, before a Cuban national can be removed to Mexico. See Rodriguez-Fernandez v. Bondi, No. 2:26-cv-00170-TMC, 2026 WL 445562, at *3 (W.D. Wash. Feb. 17, 2026) (finding that the bilateral agreement between the U.S. and Mexico is contingent upon the noncitizens consent to be removed to Mexico). Ultimately, the undersigned does not find it necessary to address this specific criteria because Respondent does not even bother to identify any specific steps that they have taken **with the Mexican government** to arrange for Petitioner's removal to that country in the six months he has been detained. This does not meet Respondent's burden of demonstrating that there is a significant likelihood of

Petitioner's removal to Mexico in the reasonably foreseeable future. Accordingly, Petitioner's detention is unlawful and he must be released. See Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025) (remedy is release upon a finding that removal was not reasonably foreseeable).

For all of these reasons, the undersigned recommends that the § 2241 petition be granted on claim one and that Respondent be ordered to release Petitioner immediately.[1] Respondent may place Petitioner on the same conditions of supervision in place prior to his re-detention on January 21, 2026. See Zadvydas, 533 U.S. at 700 (holding that a noncitizen's release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions.").

Given that the record does not show concrete steps being taken to remove Petitioner to Mexico, the Court need not fully address Petitioner's claim that he cannot be removed to Mexico in light of his claimed fear of harm there. However, the Court briefly notes here what the law already provides: Our immigration laws prohibit a noncitizen from being removed to any country where his or her life or freedom would be threatened on account of a protected ground or where it is more likely than not that he or she would be tortured if removed to the proposed country of removal. See 8 U.S.C. § 1231(b)(3), 8 C.F.R. §§ 208.16-18, 1208.16-18; 28 C.F.R. § 200.1 (prohibiting the execution of any removal order that would violate Article 3 of the Convention Against Torture). Under Ninth Circuit authority, "[f]ailing to notify individuals who are subject to deportation that they have a right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." Andriasian v. INS, 180 F.3d 1033, 1041 (9th Cir. 1999). If the government seeks to remove Petitioner to Mexico, they must provide him with a meaningful opportunity to apply for withholding of removal and protection under the Convention Against Torture as to that country.

[1] In the interests of judicial economy, the undersigned finds it unnecessary to address the remaining claims in the § 2241 petition based on the recommendation to grant relief on claim one.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be GRANTED on claim one that his indefinite post-removal detention violates due process.

2. Respondent be directed to immediately release Petitioner HAYLER BORGES (A# 074-141-633) on the same conditions of release in place at the time of his re-detention on January 21, 2026.

3. Respondent be directed to file a notice of compliance within three (3) days of any order adopting these findings and recommendations.

4. Respondent be prohibited from redetaining Petitioner without first complying with 8 U.S.C. § 241.13.

5. The Clerk of the Court be directed to:

a. Serve the California City Correctional Facility with a copy of any order of release; and

b. Enter judgment in Petitioner's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 20, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE